*In re* MANSBACH'S ESTATE.

1. WITNESSES — COMPETENCY — PRIVILEGED COMMUNICATIONS — PHYSICIANS—WAIVER OF PRIVILEGE.

  The mother of a deceased person who is his next of kin and who is contesting the probate of his will is not his personal representative and cannot waive the statutory privilege excluding decedent's physician from testifying to matters of which he acquired knowledge for the purpose of prescribing for him.

2. SAME—HUSBAND AND WIFE—RULING—ERROR—SUFFICIENCY OF RECORD.

  Where decedent's divorced wife was not permitted to testify whether the matter contained in a scurrilous manuscript written by him and reflecting on her was true, on the ground that it related to the secret relations existing between husband and wife, and the manuscript is not in the record, this court cannot say on error that the ruling was erroneous.

3. WILLS—TESTAMENTARY CAPACITY—BURDEN OF PROOF.

  In a will contest the burden of proving testamentary capacity

is upon the proponent of the will, and it is error in such a case to charge the jury that the presumption of law is that every man is sane and that he who avers insanity has the burden of proving it.

4. SAME—INSANE DELUSIONS—INSTRUCTIONS.

Where the evidence in a will contest affords a basis therefor, the court should instruct the jury that the proposed will may be disallowed upon the ground that it is the product of an insane delusion.

Error to Wayne; Donovan, J. Submitted October 18, 1907. (Docket No. 94.) Decided December 10, 1907.

Mary Maier presented for probate the last will and testament of John E. Mansbach, deceased. The will was allowed in the probate court, and Paulina Mansbach appealed to the circuit court. There was judgment for proponent, and contestant brings error. Reversed.

*A. G. Pitts*, for appellant.

*James H. Pound*, for appellee.

CARPENTER, J. John E. Mansbach committed suicide March 11, 1905. At the time of his death he was 38 years of age and resided at the home of his affianced wife, Mary Maier. His relatives consisted of his mother, Paulina Mansbach, the appellant, and some brothers and sisters. He made a will December 23, 1904, by which he devised and bequeathed all of the property to said Mary Maier. This suit is brought for the purpose of probating said will. It was tried in the court below before a jury, to whom was left the question of testamentary capacity. They rendered a verdict sustaining the will. We are asked to set aside the verdict and judgment thereon rendered for various reasons, which we will proceed to consider.

*First.* Rulings upon testimony. Contestant called as a witness Dr. George C. Bassett, a practicing physician, who had treated testator as a physician. He testi-

fied: "I learned nothing about him outside of knowledge necessary for prescribing." He was then asked: "Did you form any opinion as to his mental condition?" This was objected to and the objection sustained. It is obvious that the opinion formed by the physician was immaterial unless he could state it to the jury. The trial court was of the opinion that he was forbidden to state it by the statute (section 10181, 3 Comp. Laws). It is quite clear that the statute forbids it, unless it should be held, as contestant contends, that she had a right to waive it. It is true we have held that this privilege may be waived by the personal representatives of a deceased person. See *Fraser* v. *Jennison*, 42 Mich. 225. That principle has no application to this case, for contestant is not the representative of the testator. She stands in this suit in the attitude of an adverse party. She had therefore no right to waive the statutory privilege, and the ruling was correct.

Mrs. Emma Langdon, testator's divorced wife, was a witness for contestant. She testified that she had read part of a certain manuscript marked Exhibit 6 (a vile and indecent manuscript reflecting on the witness, written by testator, and which is not a part of this record). She was then asked if there was any foundation for the charges made in said manuscript. She was not permitted to answer this question, upon the ground that said manuscript "related to the secret relations existing between husband and wife and cannot be opened up afterwards." It is quite obvious from the ruling that the trial court was of the opinion that the witness could not answer the question without violating the statute (section 10213, 3 Comp. Laws), reading:

"Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communications made by one to the other during the marriage."

Without an inspection of the manuscript we cannot say that this ruling was incorrect. We must therefore

presume it to be correct. Other rulings are complained of. Some of these complaints are based upon no exception and others relate to rulings which were entirely proper. None of them are likely to arise upon a new trial. We do not therefore discuss them.

*Second.* The charge of the court. The trial court charged the jury:

"The presumption of law is that every man is sane, and he who avers insanity has the burden of proving it."

Was this correct? In numerous decisions extending from a very early day to the present time this court has held that in will contests the law casts upon the proponent the burden of proving that the testator possessed testamentary capacity. See *Beaubien* v. *Cicotte*, 8 Mich. 9; *Taff* v. *Hosmer*, 14 Mich. 309; *Aikin* v. *Weckerly*, 19 Mich. 482; *McGinnis* v. *Kempsey*, 27 Mich. 373; *Prentis* v. *Bates*, 93 Mich. 245 (17 L. R. A. 494).

It follows that the burden of proof does not rest upon the contestant who challenges the sanity of the testator. It rests upon the proponent who seeks to probate the will. This precise question was determined in *McGinnis* v. *Kempsey*, supra. There it was held that the following request was properly refused:

"If the jury should find that, upon the other testimony relating to the testator's mental soundness, the evidence was balanced, the jury should permit the legal presumption of sanity to decide the question in the testator's favor."

The reasoning of the court is as follows:

"There was no error in denying this request. When the question of capacity is actually controverted in case of a paper propounded as a will, it devolves upon the proponents to establish capacity by other evidence than is afforded by the common-law presumption in favor of soundness of mind, and the measure of the evidence to establish must exceed that given in opposition.

"Perhaps it would be going too far to say that the statute, in requiring substantive proof of the testator's sound

ness of mind as a prerequisite to the establishment of the will, intended to put aside altogether and for all cases the common-law presumption in favor of sanity. But conceding the existence of the presumption as a principle to operate subject to circumstances, it is very clear that it cannot have the force of an independent fact to serve as a substantial make-weight against counter proof. Because if it could, the rule of law which casts upon proponents the necessity of showing the testator's soundness of mind by other evidence might be subverted. The force and efficacy of the presumption will vary with cases, yet it can never have much influence when the issue upon the testator's sanity is contested in the usual way, by an appeal to those facts which bear upon it. And whatever force may be due to it in given instances will be owing, not to its intrinsic weight as a distinct item of proof, but to its operation in some degree, more or less, in rendering the circumstances adduced to prove sanity more persuasive.

"Whenever the facts given in evidence are such as to leave room for it to have any appreciable influence upon results, it will be entitled to be viewed rather as a property of proponents' proofs, than as something apart, and then it will not fail to be recognized by the good sense of the jury, in its tendency to strengthen the other evidence favoring sanity. The efficacy of the presumption, when it has any in contested issues, can never be predetermined, nor can any rule about it be safely laid down; and the experience and general knowledge of the triers may be trusted to consider and estimate it rightly whenever occasions make the inquiry needful."

We are therefore of the opinion that the charge under consideration was erroneous.

Insane delusions. Complaint is made because the trial court omitted to charge the jury that the will might be disallowed upon the ground that it was the product of an insane delusion. There was evidence in this case that the testator was insane. There was evidence that he entertained a feeling of aversion amounting to a hatred toward his mother; that this feeling actuated him when he made the will in question, and that it was the result of one or more delusions, which the jury would have been

warranted in saying were insane delusions. The trial judge did not cover this subject in his charge to the jury, and he was not requested to do so by contestant's counsel. Whether under these circumstances this omission constituted an error, we do not feel called upon to decide. But as the judgment must be reversed for the error already pointed out, we deem it our duty to say that upon the new trial the jury should be charged that they may disallow the will upon the ground that it is the product of the insane delusion above referred to. And the entire charge to the jury should be made to harmonize with this particular change. The task of rendering it so harmonious will compel several changes in the charge heretofore given. We do not specify those changes. They will be apparent to the counsel engaged in this suit and they are of no interest to others.

*Third.* Other complaints are made. They relate to questions of no importance to the profession and questions not likely to arise upon a second trial. We, therefore, do not discuss them.

Judgment reversed, and new trial ordered.

McALVAY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.