POWERS *v.* CITY OF TROY.

1. DEATH—PURPOSE OF DEATH ACT.
    The object of the death act is to enable an action to be brought where the deceased would have had a cause of action had he survived (CL 1948, § 691.581 *et seq.*).

2. SAME—DERIVATIVE ACTION.
    The action under the death act is a derivative action since the direct action belonged to the deceased (CL 1948, § 691.581 *et seq.*).

3. SAME—SUMMARY JUDGMENT—STILLBORN CHILD.
    Summary judgment for defendants in action under death act by administratrix of the estate of one who was negligently injured *en ventre sa mere* and subsequently stillborn *held,* proper, since such a being is not a person within the meaning of the wrongful death act (CL 1948, § 691.581 *et seq.*).

Appeal from Oakland; Ziem (Frederick C.), J. Submitted Division 2 February 9, 1966, at Lansing. (Docket No. 970.) Decided October 25, 1966. Leave to appeal granted by Supreme Court December 30, 1966. See 378 Mich 747, 380 Mich 160.

Complaint by Hazel L. Powers, administratrix of estate of Baby Boy Powers, deceased, against City of Troy and Alex Ventittelli for damages under the wrongful death act. Plaintiff claimed decedent was injured while *en ventre sa mere* when

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Death § 12.
[2] 22 Am Jur 2d, Death § 13.
[3] Prenatal injury as ground of action. 10 ALR2d 1059, 27 ALR2d 1256.

the mother was injured in an automobile collision caused by defendant Ventittelli, and later was stillborn. Defendants' motion for summary judgment was granted. Plaintiff appeals. Affirmed.

*Cicinelli, Mossner, Majoros & Harrigan,* for plaintiff.

*Patterson & Patterson and Barrett (Robert G. Waddell,* of counsel) for defendants.

LESINSKI, C. J.    This case presents to our Court the singularly novel question of whether a child who is negligently injured *en ventre sa mere,* and is subsequently stillborn is a "person" within the meaning of our wrongful death act, CL 1948, § 691.581 *et seq.* (Stat Ann 1959 Cum Supp § 27.711 *et seq.*).[1]

The facts viewed most favorably for the plaintiff indicate that on October 29, 1962, Hazel Powers was involved in an automobile accident in Troy, Michigan. At the time of the accident, she was six months pregnant, and as a result of that accident her child, Baby Boy Powers, was stillborn.

Through probate proceedings, Mrs. Powers was appointed administratrix of the child's estate. On August 28, 1964, as administratrix, she filed suit in Oakland county circuit court for damages arising out of the wrongful death of Baby Boy Powers.

The defense filed a motion for summary judgment, as provided by GCR 1963, 117.2(1), alleging that the plaintiff's pleadings failed to state a claim upon which relief could be granted. On April 26, 1965, the trial court granted the defense motion with a finding that "a viable baby boy in its sixth month of

---

[1] See, currently, CLS 1961, § 600.2922, as amended by PA 1965, No 146 (Stat Ann 1965 Cum Supp § 27A.2922). The statute relied on in our determination relates to all causes of action arising prior to January 1, 1963.

gestation which is negligently injured by a defendant and subsequently stillborn is not a 'person' within the meaning of Michigan's wrongful death act." This order, entered on June 3, 1965, is the basis of the present appeal.

The question to be resolved in relation to the wrongful death act is whether the deceased herein is a person within the contemplation of the act.

For the Michigan cases on point, we find *Newman v. City of Detroit* (1937), 281 Mich 60, and *LaBlue v. Specker* (1960), 358 Mich 558. In *Newman*, the Court allowed no recovery under the survival act[2] for the death of a three-month old infant from an injury sustained 22 days prior to birth. The Court stated at p 64 as its conclusion that:

"Plaintiff has no cause of action under the common law or under any statute."

We are constrained by *stare decisis* to adhere to this view.

The question in *LaBlue* was whether a child unborn at the time her father died could collect for the loss of his support due to his death under the dram shop act.[3] The holding of the Court after an exhaustive review was that:

"Applying the present condition of the law to the instant case, we hold that the plaintiff's ward was a 'child' or 'other person' within the meaning of CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993), even though she may not have reached the status of viable fetus at the time of the death of her father."

The *LaBlue Case,* in holding that the language of the dram shop act can be read broadly enough to mean that a fetus was a "child" or "other person," cannot be considered as authority for the proposi-

[2] Now cited as CLS 1961, § 600.2921 (Stat Ann 1962 Rev § 27A-.2921).
[3] CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993).

tion that a fetus is also a *"person"* under the wrongful death act.

The relevant substantive section of the statute in question reads as follows: (CL 1948, § 691.581, *supra*)

"Whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall hereafter be brought *only* under this act." (Emphasis supplied.)

Except for the two Michigan cases enumerated above, we find no other authority in our State relating to the issue at bar. However, there is outstate authority for appellant's position.

In *Fowler* v. *Woodward* (1964), 244 SC 608 (138 SE2d 42), we find a case similar to the case at bar. In *Fowler,* the administrator of the estate of baby child Fowler brought an action for wrongful death of an unborn viable infant, under the South Carolina wrongful death statute. The child in *Fowler,* while in the eighth month of gestation, perished with its mother in an automobile accident. The court held that such a child, being viable, was a person within the contemplation of their wrongful death statute.

Another case wherein the facts are parallel is *State* v. *Sherman* (1964), 234 Md 179 (198 A2d 71). Here also there was a viable child of nine months gestation stillborn as a result of the negligence of

the defendant. The court held that the action survived under the Maryland Lord Campbell's act.

In *Todd v. Sandidge Construction Co.* (CA 4, 1964) 341 F2d 75, the Court, commenting on the arbitrary nature of requiring a child to be born alive for recovery for prenatal injuries, stated: (pp 76, 77)

"To balance the right of action upon whether the child, fatally injured by the negligence of another, is born dead or alive seems not only an artificial demarcation but unjust as well. To illustrate, if the trauma is severe enough to kill the child, then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim could succeed. Practically, it would mean that the graver the harm the better the chance of immunity. Moreover, it allows the act of the tort-feasor to foreclose his own liability—the life of the action would be in his hands. These results have a sound cogency, quite aside from the general reasons justifying the death statutes, for the argument that those deprived of their own by death should not also be deprived of all recompense by the death."

The Michigan dram shop act, *supra,* gives a right of action to "every wife, husband, child, parent, guardian or other persons who shall be injured * * * by reason of the unlawful selling * * * [of] any intoxicating liquor." The object of the statute is to save the public from the burden of having the named persons, injured through the illegal furnishing of intoxicants, dependent on public welfare. See *LaBlue* at 578. Thus, in *LaBlue,* the plaintiff-appellant was permitted recovery under the above-mentioned judicial rationale.

In contrast, the Michigan wrongful death act, *supra,* authorizes recovery by those "who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered * * * shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereto." Here, the object of the statute is to enable an action to be brought where the deceased would have had a cause of action had he survived. It is a *derivative* action since the direct action belonged to the deceased. This point is exemplified by case law wherein the plaintiff has been denied recovery because the deceased, had he lived, would have been unable to recover. The Michigan dram shop act provides for a *direct* action by those injured where the illegal sale of intoxicants to the person who was their means of support was a proximate cause of injury, and hence has deprived such plaintiffs of their means of support.

Therefore, while we find authority for the proposition of the appellant, we are bound by the holding in *Newman, supra,* the intent of the legislature under the Michigan wrongful death act, and the clear meaning of the term "person" as used therein.

The action of the trial court in granting a summary judgment in favor of appellees of no cause of action was proper.

Affirmed. Costs to appellees.

T. G. KAVANAGH and QUINN, JJ., concurred.